## JOHN SCOTT et al., Appellants, v. PARKVIEW REALTY AND IMPROVEMENT COMPANY.

### In Banc, March 1, 1912.

1. **APPEAL: Nonsuit as to Some Counts: Verdict as to Others: One Final Judgment.** Where plaintiff suffered nonsuit as to two counts in his petition, and the trial proceeded to a verdict on the others, and one judgment was entered, reciting the nonsuit on some of the counts and a judgment for defendant thereon, and a verdict on the others and a judgment for plaintiff on them, and thereafter plaintiff filed his motion to set aside the judgment of nonsuit, and it being overruled he appealed, there was but one final judgment, and that embraced the whole case, and plaintiff can maintain his appeal, and the court will pass only on the correctness of the involuntary nonsuit.

2. ———: ———: ———: ———: **Effect of Reversal.** But if the judgment is reversed, the reversal will be as to the whole judgment, but the verdicts as to the two counts on which plaintiff had judgment will not thereby be set aside, but they will be reserved, and incorporated in the final judgment to be rendered after a trial on the other counts as to which he suffered a nonsuit.

3. **CONTRACT: Grading: Amount of Overhaul: Engineer's Interpretation.** Under plaintiffs' contract to grade 200 acres of land, they were to be paid eighteen cents per cubic yard when the average haul was 1400 feet, and in addition three-fourths of one cent per cubic yard for every 100 feet of average haul in excess of 1400 feet. The contract required the plaintiffs

to do the work "in accordance with directions which may from time to time be given by the engineer for the party of the second part in charge of the work;" also that "the engineer's opinion as to the increase of haul is to be binding on both contracting parties;" but "that nothing herein contained shall be construed to affect the right of the party of the second part, hereby reserved, to reject the whole or any portion of the work should the engineer's certificate of the amount and value of the work be found or known to be inconsistent with the terms of this agreement or otherwise improperly given." *Held*, that the apparently inconsistent clauses of the contract can be reconciled only by holding that the opinion of the engineer in matters pertaining to the science of engineering should be binding on both parties, but it did not give to him power to judge the law of the case, and his certificate was not binding on either party if it was contrary to the terms of the contract; *and*, since he testified that he did not object to the way plaintiffs did the hauling and that he measured the overhaul not by the way it was actually done, but in the way he thought it might have been done, and that if his certificate were accepted the plaintiffs would lose $50,000 on the work, his certificate is not final as to the value of the work. He had no power to substitute for the actual overhaul done the overhaul which might have been effected with different means and under a different plan of operation. He had no power to construe the contract to mean what it did not say. Its interpretation is for the court.

4. ——: ——: ——: ——: Means to be Employed: Contractor's Right Where Contract is Silent. Where a grading contract provided that the contractor should be paid eighteen cents per cubic yard when the average haul was 1400 feet and three-fourths of a cent in addition for every 100 feet of average haul in excess of 1400 feet, and the contract did not specify the appliances to be used for hauling, the contractor had the right to decide what was the most economical and expeditious manner of doing the work. Instead of doing it with spades, scrapers, wagons and teams, he had a right to do it with steam shovels, engines and cars, on a railroad track erected by him for that purpose.

5. ——: ——: ——: ——: No Objection Amounts to Consent. And where the engineer was on the ground and saw how the haul was being done, and did not object to the method being used, his failure to object amounted to consent to the use of the steam shovels, cars and railroad track; and since under the contract the engineer was the landowners' vice-principal, his consent was theirs.

6. ———: ———: Settlement: No Counterclaim. Where the counterclaim pleaded by defendant—to-wit, that liquidated damages at the rate of $500 a day if the work was not completed within a given time were to be deducted—was not supported by any evidence that it was taken into account when the settlement was made, but all the evidence is that the defendant in the negotiations took the position that it would pay only what the engineer certified was due and no more, and his estimates of what defendant owed did not include that item, there is no such accord and satisfaction as bars a reopening of the account. The settlement was not a compromise, because defendant conceded nothing.

7. ———: ———: ———: Receipt in Full: Exception. Part payment of a debt is not a discharge of the whole obligation, even when the creditor gives a receipt in full. But an exception to that rule is that, when there is an account between the creditor and debtor sufficiently involved to afford the basis of a fair dispute as to the amount due, and after full consideration the creditor yields to the debtor's view and agrees to accept the amount which the debtor concedes to be due and gives a receipt in full, and there is no other controlling consideration or matter, the settlement is binding, for then it comes under the head of account stated.

8. ———: ———: ———: ———: Threatened Insolvency: Misrepresentation: Coercion. Where the defendant conceded a certain sum to be due plaintiffs and told them they could accept that or nothing, and plaintiffs informed the defendant's president that they were going to sue for the amount they claimed to be due, and he thereupon said it would suit the company just as well to be sued, because if the company should settle then it would have to borrow the money it proposed to pay, whereas a lawsuit would last three years or longer, and in the meantime if the company was successful in disposing of its property it would have enough to pay the whole of plaintiff's claim or else it would be insolvent and plaintiffs would get nothing; and plaintiffs looked up the matter and were satisfied the prospect of insolvency as foreshadowed by the president was correct, and they then yielded to defendant's demand and settled, giving a receipt in full, but thereafter upon further investigation they ascertained that the representation as to insolvency was not true, the settlement is not such an accord and satisfaction as bars plaintiffs from recovering what is due them, for the president thereby introduced an element of coercion into his offer, and did not deal fairly with his creditor, and hence is not entitled to the advantage so obtained.

9. ———: ———: ———: ———: **Concealment.** A conceal-
ment of the available assets of a corporation by its president,
in his discussion of the company's solvency and ability to pay
its debt to plaintiffs, when because of his representation that
it was insolvent plaintiffs were induced to give a receipt in
full of their claim, is a material fact bearing on the question
of the fairness of the alleged settlement, whether the conceal-
ment was intentional or not.

10. ———: ———: ———: ———: **Coercion: Misrepresenta-
tions: Fraud.** Where plaintiffs sue for the balance due on
account, and defendant pleads settlement, and plaintiffs reply
that the settlement was coerced by defendant's representations
that it was insolvent, it is no defense that such representations
were true and therefore there was no fraud. Such a suit is
not a case of obtaining goods under false pretense. It is the
case of a debtor, professedly able then to pay what he conceded
to be due, refusing to pay it, and coercing his creditor to
execute a receipt in full by holding up to him the prospective
insolvency of the company. If the settlement was coerced under
such circumstances it was not fair, and whether it was so
obtained is a question of fact for the jury.

Appeal from St. Louis County Circuit Court.—*Hon.
J. W. McElhinney,* Judge.

REVERSED AND REMANDED (*with directions*).

*Kinealy & Kinealy* for appellants. ·

(1) This being an appeal from the action of the
court in refusing to set aside nonsuits as to the first
and third counts of the petition, plaintiffs' ·evidence is
to be taken as true, defendant's contradictory evi-
dence as untrue, and every inference of fact made in
favor of plaintiffs which can reasonably be drawn from
the evidence so considered. Forbes v. Dunnavant, 198
Mo. 193; Mockowik v. Railroad, 196 Mo. 550. (2) The
provision of the contract that "the engineer's opinion
as to the increase of haul is to be binding on both the
contracting parties" did not make the engineer an
arbitrator for the construction of the contract. What
was meant by the "haul" is to be determined by a
proper interpretation of the contract, and therefore

even if Mr. Pitzman had had the right to make up the estimate it was not binding, because based upon an erroneous construction of the contract. Lewis v. Railroad, 49 Fed. 708; Williams v. Railroad, 112 Mo. 463; Wilcox v. Baer, 85 Mo. App. 587; Elevator Co. v. Mertz, 107 Mo. App. 28; Carr v. Lackland, 112 Mo. 442; Const. Co. v. Tie Co., 185 Mo. 25; Patterson v. Camden, 25 Mo. 13; Ganson v. Madigan, 15 Wis. 153; Railroad v. Moynihan, 179 Mo. 629. (3) And to have been binding the estimate would have had to be made up by the engineer in the utmost good faith and without any ulterior purpose, and under the evidence in this case that was a question for the jury. Williams v. Railroad, 112 Mo. 463; Lewis v. Railroad. 49 Fed. 708. (4) The fact that the receipt given in this case purports to be in full of the amount due for the work done does not bar appellants from maintaining this action for the balance really due. Sawyer v. Walker, 204 Mo. 133; Aull v. Trust Co., 149 Mo. 1; Dawson v. Wombles, 111 Mo. App. 532; Ireland v. Spicard, 95 Mo. App. 53; Rivers v. Blom, 163 Mo. 442; 23 Am. & Eng. Ency. Law (2 Ed.), 989, tit. Receipts. (5) The court erred in holding as a matter of law that the defendant had established, as a defense to the first and third counts of the petition, the affirmative defense set up in the amended answer and that for that reason the plaintiffs were not entitled to recover on either of those counts. Dalton v. Poplar Bluff, 173 Mo. 39; Milliken v. Commission Co., 202 Mo. 637; Asphalt v. Transit Co., 102 Mo. App. 469; Dawson v. Wombles, 111 Mo. App. 532. (6) The court was not justified in forcing appellants to a nonsuit on the theory that there was a bona fide dispute between the parties which was settled by the payment of a less amount than was actually due for the following reasons: (a) Because neither from the receipt nor the extrinsic evidence does it appear that the consideration for the payment of the money was the settlement of an existing dispute

between the parties. Siewing v. Tacke, 112 Mo. App. 414; Ins. Assn. v. Wickham, 141 U. S. 564; Perkins v. Headley, 49 Mo. App. 556; Milling Co. v. Insurance Co., 105 Mo. App. 146; Steinwender v. Creath, 44 Mo. App. 356; Ham v. Barrett, 28 Mo. 388; Bluedorn v. Railroad, 121 Mo. 258; Erhart v. Dietrich, 118 Mo. 418; Winter v. Supreme Lodge, 96 Mo. App. 1. (b) Because the question of the measurement of the haul had long before the date of the final payment on February 1, 1904, been settled and agreed upon between the parties and thereby became liquidated and thereafter the defendant could not, had it so desired, reopen the question so as to make it a live dispute in good faith. Ins. Assn. v. Wickham, 141 U. S. 564; Harrison v. Iron Works, 96 Mo. App. 348; 19 Am. & Eng. Ency. Law, p. 391; Pollman Co. v. St. Louis, 145 Mo. 651. (c) Because even if there had been a dispute between the parties the question of its good faith was for the jury. Goodson v. Acc. Assn., 91 Mo. App. 339; Chamberlain v. Smith, 110 Mo. App. 657; Lightfoot v. Hurd, 113 Mo. App. 612. (7) The court erred in excluding the evidence offered by appellants to show that respondent's capital stock had not been fully paid but that a number of its stockholders were financially able to respond to a judgment. The evidence was competent on the question of *bona fides*. (8) The compromise and settlement of this same dispute by the payment of the same final payment here involved having been pleaded as an affirmative defense to the fifth and sixth counts of the petition as well as to the first and third, and the verdict and judgment having gone against defendant upon said fifth and sixth counts on said affirmative defense, and defendant not having appealed from that judgment, that defense has now become *res adjudicata* against respondent. Wilson v. Boughton, 50 Mo. 17; Young v. Byrd, 124 Mo. 590; Case v. Bridge Co., 58 N. Y. Super. 435; Water Works Co. v. School Dist., 23 Mo. App. 227; West v. McMullen,

112 Mo. 405; Kimberly Co. v. Young, 90 Mo. App. 505; State ex rel. v. Railroad, 149 Mo. 109.

*Henry S. Caulfield, George W. Lubke* and *George W. Lubke, Jr.,* for respondent.

(1) This court will not review the action of the trial court in sustaining the demurrer to the evidence, because eight exhibits which were in evidence before the trial court and which were introduced by appellants have been lost by the appellants, and are not contained in the bill of exceptions or the abstract of either party, and no evidence of their substance is available. Christopher v. White, 42 Mo. App. 428; Vandeventer v. Goss, 190 Mo. 239; McCullough v. De Witt, 163 Mo. 306; Rutledge v. Tarr, 95 Mo. App. 265; Deering v. Hannah, 93 Mo. App. 618; Costello v. Fesler, 80 Mo. App. 107; Brand v. Cannon, 118 Mo. 595; Tobacco Co. v. Walker, 123 Mo. 670; Doherty v. Noble, 138 Mo. 25. (2) The final estimate and certificate of the engineer was binding upon the appellants. Williams v. Railroad, 153 Mo. 487; Howard County v. Baker, 119 Mo. 407; Chapman v. Railroad, 114 Mo. 549; McCormick v. St. Louis, 166 Mo. 315; Iron Co. v. Halverson, 48 Mo. App. 383. (3) The appellants by acting upon the final estimate, receiving the checks of respondent based upon the final estimate, and receipting to the respondent in full for all claims under the contract, and still holding and retaining the money, gave to the final settlement the force and effect of an account stated. McCormick v. St. Louis, 166 Mo. 315; Coal Co. v. St. Louis, 145 Mo. 651; McCormick v. Transit Co., 154 Mo. 191; Adams v. Helms, 55 Mo. 468; Lindersmith v. Land Co., 31 Mo. App. 258. (4) Such settlement is so far conclusive between the parties that it cannot be reopened or gone into either at law or in equity, except upon clear proof of fraud or mistake, and not even then where, as here, the party attacking the set-

tlement was aware when he made it of the facts upon which he bases his claim for relief. There is no claim that there was a mistake here. McCormick v. Railroad, 154 Mo. 191; Pickel v. Chamber of Commerce Assn., 10 Mo. App. 191; Lindersmith v. Land Co., 31 Mo. App. 258; Dengler v. Auer, 55 Mo. App. 548; Marmon v. Waller, 53 Mo. App. 610; Kronenberger v. Binz, 56 Mo. 121; Kent v. Highleyman, 28 Mo. App. 614; Buffington v. Land Co., 25 Mo. App. 492; Marshall v. Larkins Son, 82 Mo. App. 635; Quinlan v. Keiser, 66 Mo. 603; Cannon v. Sandford, 20 Mo. App. 590; Morgan v. Joy, 121 Mo. 682; Mitchell v. Henley, 110 Mo. 598; Gens v. Hargadine, 56 Mo. App. 245. (5) There was no fraud in the procurement of the settlement. Bullock v. Woolridge, 42 Mo. App. 356; Davidson v. Hobson, 59 Mo. App. 130; Bryan v. Hitchcock, 43 Mo. 527; Parker v. Marquis, 64 Mo. 38; Hamilton v. Mallett, 8 Mo. App. 584. (6) The evidence conclusively shows a completed compromise or accord and satisfaction. Maack v. Schneider, 51 Mo. App. 92; Brink v. Garland, 58 Mo. App. 356; Tumilty v. Tumilty, 13 Mo. App. 444; Franklin v. Railroad, 97 Mo. App. 473; Cogan v. Railroad, 101 Mo. App. 179; Pickel v. Chamber of Commerce Ass'n, 10 Mo. App. 191; Marshall v. Larkins Son, 82 Mo. App. 636; Rawlins v. Rawlins, 102 Mo. 563; Tansey v. Railroad, 90 Mo. App. 101; Knorp v. Wagner, 195 Mo. 637; Coal Co. v. St. Louis, 145 Mo. 653; Darwin v. Westbrook, 71 Hun (N. Y.) 405; Boteler v. Roy, 40 Mo. App. 334; School Board 'v. Hull, 72 Mo. App. 409; Henson v. Stever, 69 Mo. App. 136; Gens v. Hargadine, 56 Mo. App. 245; Reilly v. Chouquette, 18 Mo. 220; State ex rel. v. Ewing, 116 Mo. 136. (7) The verdict and judgment upon the fifth and sixth counts of the petition are not *res adjudicata* on the question of a settlement of the cause of action set forth in the first and third counts. State to use v. Kaye, 83 Mo. App. 678; Winham v. Kline, 77 Mo.

App. 36; Spurlock v. Railroad, 76 Mo. 67; Tutt v. Price, 7 Mo. App. 194; Dickey v. Heim, 48 Mo. App. 114; Foundry & Mach. Co. v. Mfg. Co., 100 Mo. App. 414. (8) The court did not err in excluding the evidence of how respondent's capital stock was paid up.

VALLIANT, C. J.—Plaintiffs sue to recover a balance claimed by them to be due from defendant for work done in grading a certain tract of land belonging to defendant lying partly in the city and partly in the county of St. Louis.

The petition is in six counts; before entering on the trial plaintiffs dismissed their second and fourth counts, and went to trial on the first, third, fifth and sixth. At the close of the evidence on both sides the court at the request of defendant gave instructions to the jury to the effect that as to the first and third counts the plaintiffs were not entitled to recover, whereupon the plaintiffs took a nonsuit with leave as to those two counts; the trial progressed as to the fifth and sixth counts, resulting in a verdict in each for the plaintiffs; thereupon a judgment was rendered to the effect as to the first and third counts the plaintiffs take nothing by their writ, and that as to the fifth and sixth counts they have and recover of defendant the amounts awarded the plaintiffs by the verdicts of the jury. In due time plaintiffs filed their motion to set aside the judgment of nonsuit, which motion the court overruled and the plaintiffs in due form applied for and obtained an appeal to this court.

The plaintiffs' complaint here is that the court erred in giving the instructions that forced them to a nonsuit on the first and third counts; no appeal was taken by defendant and no complaint is made by the plaintiffs as to the judgment in so far as it disposes of the fifth and sixth counts.

I. It is contended that this appeal should be dismissed, because, it is said, there is a final judg-

ment as to the fifth and sixth counts, but none as to
the first and third. The argument is that since under
our statute, section 1973, Revised Statutes 1909, there
can be but one final judgment in a case, although there
may be several causes of action united in one peti-
tion, and the plaintiffs having allowed final judgment
to be entered in their favor on the fifth and sixth
counts without disposing of the first and third, their
only course now is to allow this appeal to be dismissed
and bring a new suit on the first and third counts.
But that argument overlooks the fact that this judg-
ment as the record shows disposes as well of the first
and third counts as it does of the fifth and sixth, it is
as final a judgment as to the first and third counts as
it is to the fifth and sixth, it is as final a judgment as
a circuit court can render and the whole case is dis-
posed of in one final judgment. The judgment, after
reciting facts leading to the nonsuit, continues: "And
thereupon the plaintiffs by leave of court take a non-
suit as to said first and third counts of said petition,
with leave to move to set the same aside; and it is
accordingly ordered and adjudged by the court that
plaintiffs take nothing by this their suit as to said first
and third counts of said petition." Then the judg-
ment goes on to recite the verdicts of the jury on the
fifth and sixth counts and continues: "It is there-
fore considered and adjudged by the court that plain-
tiffs have and recover against said defendant the sum
of nine hundred and twenty-two dollars, said sum be-
ing the aggregate of said sums of $872 and fifty dol-
lars, damages assessed by the jury as aforesaid," to-
gether with interest and costs, etc.

The motion to set aside the nonsuit stands in the
same relation to that part of the judgment as a mo-
tion for a new trial would stand to the part of the judg-
ment that is based on the verdict of the jury; the mo-
tion does not annul the judgment; the appeal that fol-
lows is from the judgment, not from the order over-

ruling the motion. In theory the judgment follows the order overruling the motion, though in practice it precedes it. A judgment of nonsuit may not end the litigation, because another suit may be brought on the same cause of action, but it ends that suit, and is as to that suit as much a final judgment as a judgment on the merits would be.

A party cannot appeal from a judgment that is wholly in his favor, one that gives him all he asks, but he may appeal from a judgment that gives him only a part of what he sues for. If the plaintiffs should prevail in this appeal the judgment will be reversed, not only that part relating to the first and third counts, but that part relating to the fifth and sixth also, but the verdicts will stand, there being no appeal in relation to them, and the judgment on them will be reserved to be made a part of the final judgment in the case when all the issues are tried.

The judgment rendered by the circuit court in this case fully conforms to the requirement of the statute that there shall be but one final judgment; and if the trial court was correct in its conclusions it is the only judgment it could have rendered. Respondent insists that the appeal should be dismissed for the reason that appellant has failed to bring up parts of the testimony.

Respondent has availed itself of its privilege to file an additional abstract and has also filed a statement of facts. It is not made to appear from respondent's motion to dismiss or its showing in support thereof that the part of the testimony alleged to have been omitted by appellant is material to the question of law presented to this court for consideration.

The abstracts filed by both parties put this court in possession of sufficient facts to enable us to decide the only real question in the case, that is, whether the trial court was justified in forcing the plaintiffs to a nonsuit on their first and third counts. The motion to dismiss is overruled.

II. The suit grows out of a grading contract. The first count is on the contract, the third is for the same demand but is in the form of an action *quantum meruit* for work and labor done. The answer besides a general denial pleads a settlement, accord and satisfaction; the reply is a plea of confession and avoidance, that the alleged settlement was obtained by misrepresentation and duress and was without consideration. The case seems to turn chiefly on the issue of accord and satisfaction as alleged in the answer and avoided in the reply.

The contract called for excavating earth in the high places, hauling and depositing it in the low places, for which plaintiffs were to be paid eighteen cents per cubic yard when the average haul was 1400 feet, and, in addition thereto three-fourths of one cent per cubic yard for every 100 feet of average haul when it exceeded 1400 feet. The main controversy in the case is in reference to the plaintiffs' claim for that overhaul. When the work was fully completed the engineer in charge made his final estimate showing excavating and grading of 2,053,585 cubic yards at eighteen cents, plus allowance of 260 feet as excess of overhaul, the whole amounting to $409,692.20, which after deducting amounts of previous payments left due plaintiffs $72,497.70. Plaintiffs in their bill rendered claimed that the true overhaul was 506 feet more than the 260 feet allowed by the engineer, which at the contract price showed the amount due the plaintiff to be $77,933.94 in excess of the $72,497.70 balance shown by the engineer's final estimate.

III. There is no dispute of the fact that the engineer did not estimate the overhaul as it actually was, but he estimated it on a plan of his own devising which he thought was just. The engineer, who was the defendant's agent in charge of the work, and under whose direction the contract required the work

to be done, was a witness for defendant, and on this
point testified: "I did not measure it the way they
hauled it, because I had never given any direction or
consent to hauling it in that way, but simply did not
object to it, and because they increased the haul them-
selves and because the contract provided that the haul
should be calculated according to the judgment of the
engineer in charge. To do this entire grading of two
million cubic yards with teams and wagons would re-
quire 100 teams 400 days, if they carried fifty yards
a day, which is a fair allowance. Now then operat-
ing 100 teams on 200 acres of land, they would not
interfere with each other, unless the work was pur-
posely done so as to make them interfere. · As near
as I can estimate Messers. Scott lost $50,000 on this
work." That is defendant's own testimony on that
point, adduced to justify the measurement, not ac-
cording to the fact, but according to what the engineer
thought was just. The contract required the plain-
tiffs to do the work "in° conformity with directions
which may from time to time be given by  Pitzman's
Co. of Surveyors and Engineers, or its successors, as
engineers of the party of the second part in charge
of the work." It was also stipulated: "If, in mak-
ing the final estimate it should be found that the av-
erage haul is greater than 1400 feet, then the con-
tractor is to be paid three-fourths of one cent per
cubic yard for each one hundred feet of average over-
haul in excess of said 1400 feet haul. The engineer's
opinion as to the increase of haul is to be binding on
both contracting parties." The contract also con-
tains this clause: "And when all the work embraced in
this contract is fully completed, agreeably to the spec-
ifications and stipulations of this agreement, and ac-
cepted by the engineer, said engineer shall cause a
final estimate to be made of the amount and value
of said work, according to the terms and prices of
this agreement. From the total amount so found he

shall deduct all sums previously paid or rightfully retained and certify the remainder as then due. Provided, further, that nothing herein contained shall be construed to affect the right of the party of the second part (the defendant) hereby reserved, to reject the whole or any portion of the work aforesaid should the said certificate be found or known to be inconsistent with the terms of this agreement or otherwise improperly given.''

It is on those clauses in the contract, particularly the words, ''The engineer's opinion as to the increase of haul is to be binding on both contracting parties,'' that the defendant relies for its contention that the engineer's decision is binding on the plaintiffs, although the overhaul is measured not as it in fact was done, but in a way the engineer thought it might have been done. If we read that clause in connection with the last clause above quoted we have a seeming conflict; in one clause it is said that the engineer's opinion shall be binding on both contract parties, in the other it is not binding on the defendant if the ''certificate be found or known to be inconsistent with the terms of this agreement or otherwise improperly given.'' Does it mean that it is binding on the plaintiffs although it ''be found or known to be inconsistent with the terms of this agreement or otherwise improperly given,'' but not binding on the defendant? By the clause last quoted there are two grounds on which the defendant may dispute the binding effect of the engineer's certificate, first that it is ''inconsistent with the terms of this agreement,'' second, that it was ''otherwise improperly given.'' What does that second ground mean? We can see very well how the defendant might anticipate that its own engineer might make a mistake in his judgment as to the meaning of the contract, but that the defendant should anticipate that its engineer might act ''otherwise improperly'' in giving the certificate is not so reasonable. Again,

does the preceding clause, which says that the engineer's opinion should be binding on both parties, mean that it shall be binding on the plaintiffs although "inconsistent with the terms of this agreement or otherwise improperly given," yet by force of the latter clause not binding on the defendant? Assuming that these two clauses, taken together, were designed in all fairness and honesty, the reasonable interpretation to be given them is that the opinion of the engineer in matters pertaining to the science of engineering should be binding on both parties, but it was not given him to judge the law of the case, and his certificate would be binding on neither party if it was contrary to the terms of the contract.

There is nothing in Williams v. Railroad, 153 Mo. 487, to the contrary of what is here said. In that case the contract was: "The work shall be executed under the direction and supervision of the chief engineer of said railway and his assistants, by whose measurements and calculations the quantities and amounts of the several kinds of work performed under this contract shall be determined, and whose determination shall be conclusive upon the parties, and said chief engineer shall decide every question which can or may arise between the parties relative to the execution thereof, and his decision shall be binding and final upon both parties." The court said that that was a valid and binding agreement and that "in the absence of fraud, or gross mistake, as would necessarily imply bad faith, the classification and estimates of the chief engineer and his assistants would be conclusive on both parties." In that case there was a dispute over the classification of material removed and other points relating to the character of the work done. The court said in reference to the engineer's estimate as to the character of certain work done: "At most it can only be held to have been an error in the estimation." There was nothing submitted to the de-

cision of the engineer in that case except matters pertaining to the science of civil engineering. It was not claimed that his decision would be binding if it was contrary to the terms of the contract or that he had authority to pronounce a legal interpretation of the contract. On that point the court in that case said: "Moreover, plaintiffs were entitled to show, if they could, under either count, that the engineer misconstrued the contract in his classification of the loose-rock clause, and had not measured the work according to contract. . . . We think the plaintiffs are correct in their interpretation of this clause, and, if the engineer did so misconstrue it, he exceeded the power vested in him by the contract, and there is no principle of law or equity that demands that plaintiffs should submit to a misconstruction of their contract which would result in serious loss to them. . . . It is the province of the courts to construe contracts, and the plaintiffs had a right to the construction of the courts on this clause." The power given the engineer in that case was more comprehensive than that given in the case at bar, yet the court held that he had no authority to construe the contract.

In McCormick v. St. Louis, 166 Mo. 315, the contract sued on contained this clause: "To prevent all disputes and litigation, . . . the water commissioner shall, in all cases, determine the amount of the several kinds of work, which are to be paid for under this contract, and he shall decide all questions which may arise relative to the execution of the contract, on the part of the contractor, and his estimates and decisions shall be final and conclusive." In that case the plaintiff sought to recover for certain work done by him under the contract which was not included in the final estimate, but a divided court held that the final estimate was binding on plaintiff and he could not recover. The case really seems to have turned on the plea of account stated and accord and satisfac-

tion. But the authority given the commissioner in that case was to determine the amount of the several kinds of work which are to be paid for under the contract, and to decide all questions relative to the execution of the contract; he was not given authority to interpret the contract and it was not so contended.

In the case at bar the engineer has undertaken to interpret the contract, and when the contract says that the plaintiffs are to have extra three-fourths of a cent per cubic yard for every 100 feet of average haul over 1400 feet, the engineer says it does not mean the actual overhaul, but it means an overhaul that might have been effected with different means and under a different plan of operation. The work could have been done with spades and horse-scrapers, wagons and teams; it was done with steam shovels, engine and cars, on a railroad track erected by plaintiffs for the purpose. The contract does not specify the appliances to be used; the contractor had the right to decide which was the most economical and expeditious manner of doing the work, he was under a heavy penalty to accomplish the work within a given time. Whilst the engineer testified that the plaintiffs "increased the haul themselves," he does not say or intimate that plaintiffs acted in bad faith in increasing the haul, or that, using the means and appliances that were used, there was any unnecessary increase. He said: "I did not measure it the way they hauled it, because I had never given any direction or consent to hauling it in that way, but simply did not object to it." One of the engineers of the Pitzman Company was on the ground every day supervising and directing the work, Mr. Pitzman himself was there frequently supervising the work, he saw how it was being done and knew the route that was being taken in hauling the material, he was the agent of the defendant to see that the work was done according to the contract, in that respect he was the defendant's vice-principal, Un-

der those circumstances there is no difference between not objecting and consenting.

In a letter to the defendant company touching the point in dispute Mr. Pitzman said: "My entire plan for the work was based on a wagon haul and when the contractors proposed to make the long haul by the use of steam shovel and cars, I changed my plan to accommodate them, but I did not suppose that the company would or could be charged for the excess of haul in consequence of the change of motive power. To my knowledge no order has been given to the contractors during the progress of the work in consequence of which the length of haul has been increased, provided the hauling had been done by teams, but the use of steam shovels and cars did increase the length of haul. If the length of haul is calculated by carrying all the earth used for filling east of the railroad over the bridge built over the Wabash I am satisfied that the average haul would be increased about 500 feet over and above the haul as stated in my final estimate. My superintendent reported weekly the number of teams, men, steam shovels, engines and graders used on the work and I am satisfied from my calculations and estimates that John Scott & Sons after collecting the estimate as submitted will find that their loss on this contract exceeds $50,000, which fact I regret exceedingly, because they have done first-class work, notwithstanding the fact that they were losing money daily. If John Scott & Sons should insist upon the payment of the estimate made by Mr. Russell and you would decline to pay it, they could appeal to the courts, and what the court or jury would decide is, of course, problematic. All I can say is that I have carefully considered every point and given my unbiased opinion."

The contract says that the engineer's "opinion as to the increase of haul is to be binding on both con-

tracting parties." That means his opinion as to how much the overhaul actually was; but it cannot be said the measurement given in his final estimate was his opinion as to what the overhaul actually was, because he says in his letter, which we have just read, that if the overhaul was calculated by the route it was actually made, "I am satisfied that the average haul would be increased about 500 feet over and above the haul stated in my final estimate." That is his "opinion as to the increase of haul." And his testimony was to the same effect. That is his opinion as an engineer, but in his final estimate he did not confine himself to the science of a civil engineer in which he is an expert, but undertook to construe the contract and construed it to mean that it gave him the power to substitute what might have been for what was. The contract did not make the engineer the umpire to construe it; when the contest arose between the parties to the contract as to its meaning that contest could be settled only in the courts.

So far we have discussed this point from the defendant's testimony alone, but the testimony on the part of the plaintiffs put their case in a stronger light. Their testimony tended to show that the overhaul was along the shortest route practicable; that both before and after the contract was signed they discussed the matter with Mr. Pitzman and explained to him the manner and means they purposed to adopt, and pointed out the general course of the route. Mr. Pitzman located the bridges that plaintiffs had to build for their railroad track to cross the River Des Peres and assisted them in obtaining a crossing over the Colorado railroad. He knew that they were going to do the work mainly with steam shovels, engine and cars; while the work was in progress he told them that the overhaul would be measured as it was actually made; after the work was completed and they came for their final estimate, he told them that he could not cal-

culate the overhaul as it was made, because it would be too much money and the Park View Realty Company would not pay it. There was a good deal of other testimony on the part of the plaintiff on this point but we do not deem it necessary to mention more of it, because enough has been mentioned to show that the plaintiffs made a prima facie case and were entitled to go to the country on the first and third counts of their petition, unless they were precluded by the facts stated in the answer as accord and satisfaction. We do not of course pass on the weight of the evidence, but we do hold that it was not the province of the engineer to interpret the contract and that his estimate based on his legal opinion of the meaning of the contract is not binding on the plaintiffs.

IV. We will now consider the plea of accord and satisfaction.

1. By its amended answer the defendant said that on the first day of February, 1904, the plaintiffs were fully aware of all the facts and conditions they now complain of; they had asserted their claim for the overhaul to the defendant's engineer and to defendant, and had fully discussed the matter; that defendant "in good faith claimed against and to plaintiffs that it was entitled to liquidated damages from plaintiffs as provided in said contract, modifications and supplements, on account of plaintiffs having failed to complete the work agreed by them to be done within the time agreed upon in said contract, modifications and supplements; and plaintiffs and defendants contended concerning said claim of plaintiffs and said claim of defendant;" and that finally on February 1, 1904, defendant "in a spirit of adjustment and compromise tendered to plaintiffs $76.497.70 in full accord and satisfaction" of all claims, and the plaintiffs accepted the same and gave a receipt in full of all damages.

2.   In so far as that plea rests on the alleged claim of liquidated .damages for failure to complete the work in the time specified there was no evidence to support it. The contract called for liquidated damages at the rate of $500 a day if the work was not completed within the time specified, and the statements in the petition show that it was not completed within that time.   In the final estimate which Mr. Pitzman submitted to the defendant he said: "The above is subject to our right to claim liquidated damages for delay in completing the work on time.   Under the terms of the supplemental contract the work was to have been completed October 1, 1903, whereas they finished the grading December 5, 1903."   That communication was addressed and delivered to the defendant company before the alleged settlement was made; it was after several spirited discussions between the plaintiffs and the engineer in his office as to the amount due the plaintiffs, wherein no claim of liquidated damages was made.   The matter then came before the board of directors of the defendant when there was again a discussion long and spirited, in which the question was whether the board would pay what the plaintiffs claimed was due them for the actual overhaul or would abide by the engineer's estimate, and they finally resolved that they would pay what the engineer's estimate called for, and no more.   The board then, with Mr. Pitzman's estimate before them suggesting that a claim of liquidated damages might be made, made no such claim.   Mr. Coffin, one of the board of directors, testified: "At the two meetings of the board referred to, the board always took the position and held to it that they would pay the amount of the estimate of the engineer and no more, and they never offered anything more than that amount.   They were willing to pay that, no more and no less.   They took the position that they were bound under the contract to pay that amount.   There was no compromise offered, it was

just the one thing." Mr. Greenwood, another member of the board, testified: "The members of the board then stated that they felt that they would be justified only in paying what the engineer in charge had certified to and that they would pay and they felt they were bound to pay it, to pay what the engineer had estimated and they were ready and willing to do that and nothing more." The only item in dispute was the item of overhaul, there was no hint of a counterclaim. There were two meetings of the board and every phase of the case was considered; if it was in the mind of any one that the company had a claim, which counsel for defendant in their brief now say amounted to at least $30,000, is it reasonable to suppose that no mention of it was made? The defendant in the alleged compromise made no concession, waived no claim, they paid only what they admitted to be due as the testimony of their two directors shows and as all the facts show.

The amount shown by the engineer's estimate as due the plaintiffs was $72,497.70, the amount paid plaintiffs was $76,497.70, the $4000 added was an item in previous estimates among orders of plaintiffs supposed to have been paid by defendant for plaintiffs during the progress of the work, but it was discovered that that item had not been paid and therefore it was added to the plaintiffs' balance; there was no dispute about that and that it is not claimed as a disputed point is conceded.

3. Defendant refused to pay what it conceded to be due unless plaintiffs would accept the amount as in full satisfaction of all their claim, plaintiffs yielded to the demand and signed the receipt, and defendant now pleads that that was a fair compromise, accord and satisfaction. Plaintiffs in their reply say that defendant told them that unless they accepted the amount tendered on the terms offered it would pay them nothing and they would have to sue, that the

litigation would last at least three years and by the end of that time the defendant would have disposed of its property and have no means to pay; that plaintiffs investigated the matter and became satisfied that defendant was rapidly placing its property in such condition that they could not collect by law a judgment that might be obtained at the end of a long litigation, and so they accepted the tender and gave the receipt in full; but that afterwards plaintiffs discovered that notwithstanding the articles of association declared that the stock subscriptions had all been paid in full in cash yet that some of the solvent stockholders in defendant corporation had not paid their stock subscriptions in full and the amounts due by them would be sufficient to satisfy plaintiffs' claim, and upon that discovery they brought this suit.

Part payment of a debt is not a discharge of the whole obligation even when the creditor gives a receipt in full. But an exception to that rule is when there is an account between the creditor and debtor sufficiently involved to afford the basis of a fair dispute as to the amount due and after full consideration the creditor yields to the debtor's view and agrees to accept the amount which the latter concedes to be due as in full satisfaction and gives a receipt in full; it comes under the head of account stated and is binding. If therefore it be conceded that there was ground for a fair dispute as to whether the plaintiffs were entitled to pay for their overhaul, estimated on what it actually was, or were entitled only to so much as the engineer estimated it would have been if done differently, and if the plaintiffs finally yielded the point and agreed to settle and did settle on the theory contended for by defendant, and if there was no other moving influence in the case, then the settlement was binding.

But there was another influential fact in this case according to plaintiffs' testimony that forced them to this settlement. After the second session of the board

of directors and they had pronounced their ultimatum, one of the plaintiffs had a discussion of the subject with the president of the company in which he gave the president to understand ·that they were going to sue for the amount they claimed to be due, and there-, upon the president said it would suit the company just as well to be sued, because if the company should settle then it would have to borrow the money it proposed to pay, whereas a lawsuit would last three years or longer, and in the meantime if the company was successful in disposing of its property it would have enough to pay the whole of plaintiffs' claim or else it would be insolvent and plaintiffs would get nothing. Plaintiffs looked into the matter and were satisfied that the prospect of insolvency of the company foreshadowed by the president ·was correct and they yielded to defendant's demand and settled, giving a receipt in full.

Ordinarily there is nothing wrong in a debtor, dealing with an honestly disputed balance of account, saying to his creditor, This is all I owe you, but I am not willing to pay it to you and then leave you free to sue me for the balance which you claim; I will pay you this only on condition that you accept the amount in full satisfaction of your claim and receipt for it accordingly. The presumption in such case is that if the creditor is right in his claim the law will give him satisfaction, therefore no wrong is done him, he is free to accept what is offered or go to law with confidence that in the end the law will give him what is right.

But if the debtor should take the occasion to represent to his creditor his financial condition as being such that at the end of the lawsuit there would be nothing to satisfy the judgment, he would thereby introduce an element of coercion in his offer. The offer then instead of being, take this or take what the law will adjudge to be your due, will be equivalent to take

this or you will never get anything.  A debtor who refuses to pay what he acknowledges to be due under those circumstances does not deal fairly with his creditor and is not entitled to the advantage so obtained; if he knows that the probabilities are such that a lawsuit would yield his creditor nothing, the only honest course to pursue is to pay what he acknowledges to be due.   Respondent relies on the decisions of this court in Pollman Coal Co. v. St. Louis, 145 Mo. 651, and McCormick v. St. Louis, 166 Mo. 315.  In both of those cases the plaintiffs were offered the alternative of taking what the city admitted to be due or going to law for what they claimed; they accepted what was tendered and receipted in full, and sued the city for the balance claimed; the court held the settlement valid and binding.  But in those cases the creditor was not dealing with an insolvent debtor or with one representing himself as insolvent, the courts were open to the creditor and there was no doubt of the city's ability to satisfy the judgment.  There was no coercion there.

4.  Besides there was, according to the plaintiffs' reply and their offer of proof, a concealment of available assets of the corporation by the president in his discussion of the subject with the plaintiffs, perhaps not an intentional concealment, but still a failure to disclose an important fact bearing on the very point then under discussion, that is, the indebtedness of solvent stockholders for their unpaid, or fictitiously paid, stock subscriptions.  That was a material fact bearing on the question of fairness of this alleged settlement, and the court erred in rejecting the plaintiffs' evidence offered.

It is argued that because the representations of the president as to the prospective insolvency of the corporation were true, there was no fraud.  But this is not a case of obtaining goods under false pretenses; it is the case of a debtor, professedly able then to pay

what he acknowledged to be due, refusing to pay it, and coercing his creditor to execute a receipt in full by holding up to him the prospective insolvency of his company. If the alleged settlement was coerced under the circumstances which the plaintiffs' testimony tended to prove, it was not a fair settlement and the plaintiffs are not bound by it; whether it was so obtained it is not for this court nor was it for the trial court to say; it was a question for the jury.

The settlement was not a compromise because there was nothing conceded by defendant, it was not an accord and satisfaction because there was no consideration to support it, and it was not a binding settlement if it was obtained under the circumstances above indicated.

The judgment is reversed and the cause remanded to be retried according to the views herein expressed. All concur, except *Woodson, J.*, who concurs in all except paragraph 4 and the result, as to which he dissents.