Lillian **KENNEDY**, (Plaintiff) Respondent,

v.

Paul E. **DIXON**, Administrator of the Estate of Mary Towey, Deceased, (Defendant) Appellant.

No. 52970.

Supreme Court of Missouri, En Banc.

March 10, 1969.

As Modified on Courts own Motion and Rehearing Denied April 14, 1969.

Thompson, Walther & Shewmaker, Harold C. Gaebe, Jr., St. Louis, for respondent.

James J. Amelung, Ronald C. Willenbrock, Holtkamp & Amelung, St. Louis, for appellant.

FINCH, Judge.

This is an appeal by defendant from a judgment in favor of plaintiff for $19,000 for personal injuries arising out of an automobile accident which occurred in Indiana.

We reverse and remand.

Edward Towey and Mary, his wife, lived in an apartment at 6444 Alamo Street in St. Louis. Mrs. Towey's nieces, Marguerite and Maureen Long, lived with the Toweys and had since the death of their mother. Their father lived in New York. August 1963 was Mr. Towey's vacation time and the family planned a trip to New York, particularly to permit the nieces to visit with their father. Plaintiff, a teacher who lived in the same apartment building, went with them on that trip, although Mr. Towey testified that he did not know that plaintiff was to accompany them until the day before they left.

In any event, Mr. and Mrs. Towey, the two nieces and Mrs. Kennedy, the plaintiff, left St. Louis on August 5, 1963, to drive to New York in Mr. Towey's Chevrolet. In New York they stayed in Mr. Long's apartment. While in New York, Mrs. Kennedy made two trips out of the city, one a conducted tour of New England. When she returned from the latter trip, she went to Mr. Long's apartment where she remained with the others for two days, until they started the return trip to St. Louis.

On the second day of the return trip they were involved in a head-on collision in which Mrs. Towey was killed and plaintiff was injured. They had stopped at about 10:15 a. m. at a rest stop on the turnpike near Angola, Indiana. When they started again, Mrs. Towey took over the driving. Mr. Towey was in the front seat with her and Mrs. Kennedy and the two nieces were in the back seat. The evidence was that it was a clear, dry day, and the Towey Chevrolet was in excellent condition.

In leaving the rest area to reenter the westbound pavement of the turnpike it was necessary to proceed over an exit ramp on the left side of which there was a concrete curb six to eight inches in height. The Chevrolet traveled along this ramp at 15 to 20 miles per hour, according to Mr.

Towey, and "not fast", perhaps 25 to 30 miles per hour, according to Marguerite Long. Suddenly, it bumped, evidently caused by striking the concrete curb on the left. It ran over the curb, crossed the 24-foot westbound pavement, crossed a grass median strip (45 feet wide), and finally went onto the eastbound pavement where it collided head on with a tractor-trailer unit which was headed east. It seemed to accelerate after the "bump" and seemed to be going "fast" at the time of collision. The car traveled 204 feet from the point where it crossed the curb until it collided with the truck.

Other evidence will be detailed as necessary in connection with specific points presented for decision.

Missouri does not have a guest statute, but Indiana does. It (§ 47–1021, Burns' Indiana Statutes Annotated, Vol. 8, Part 3, p. 62) provides as follows:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

Plaintiff's petition was separated into three counts, each asserting a separate theory of recovery for the personal injuries which she sustained. Count I alleged that the parties all lived in Missouri, made arrangements in Missouri for the trip which was to originate and terminate in Missouri and that the automobile in which they rode was licensed and garaged in Missouri. This count was drafted on the theory that the relationship between the parties would be governed by Missouri law and that the Indiana Guest Statute would not be applicable for that reason. Count II, drafted on the theory that Indiana law would govern relationship of the parties, alleged that

plaintiff was riding as a fare-paying passenger and not as a guest. In Count III plaintiff sought recovery under the Indiana Guest Statute, alleging that her injuries were caused "by the conscious indifference of Mary J. Towey to the consequences of her own acts in the manner of operation of the aforementioned automobile and said collision and plaintiff's injuries directly resulted from the wanton and wilful misconduct of Mary J. Towey in the operation of said automobile."

The trial court sustained a motion by defendant to dismiss Count I, thereby denying the plaintiff the opportunity to submit her case to the jury on the theory that Missouri law was applicable. The court submitted the case to the jury on Counts II and III and the jury found the issues on each in favor of plaintiff and returned a verdict for plaintiff for $19,000. Judgment in that amount was entered. Defendant appealed after his motion for new trial was overruled.

Defendant first asserts that plaintiff did not make a submissible case on Count II and that his motion for a directed verdict thereon should have been sustained. This contention is made on the basis that there was no substantial evidence that plaintiff was a fare-paying passenger.

The evidence on this issue was limited by the court by reason of § 491.010, RSMo 1959, V.A.M.S., Missouri's so-called Dead Man's Statute. Plaintiff sought to testify concerning arrangements made with Mrs. Towey but an objection was sustained, and plaintiff made an offer to prove that she made arrangements with Mrs. Towey in St. Louis whereby each woman would put up $50 toward payment for transportation and other expenses of the trip and each would put up more, if necessary, when that was gone. She also offered to testify that while in New York she delivered her check No. 591 for $50 to Mrs. Towey. Plaintiff was permitted, over objection based on the Dead Man's Statute, to offer in evidence a book of check stubs Nos. 570 to 592, inclusive, and bearing dates from 7–2–63 to an

undated check No. 592 for $202 to Tauck Tours, marked "Trip". Plaintiff testified that this stub No. 592 was for a check in payment for her New England tour taken while she was in New York. Check stub No. 591 was dated 8–10–63 and was for $50 with payee shown as Mary Towey. It was marked "Trip". Plaintiff was permitted to testify with respect to her custom of keeping check stubs and that the entry on stub 591 was made in New York.

The transcript in this case further shows that the $50 check to Mrs. Towey was never charged to the account of Mrs. Kennedy and was not found in the pocketbook or other possessions of Mrs. Towey after the accident. Mr. Towey and the two Long girls all testified that they had never seen the check and knew nothing about it.

■ Defendant argues that there was no substantial evidence of any payment by plaintiff to Mrs. Towey for transporting her to and from New York. He argues that there was no evidence of any agreement to pay and no evidence that Mrs. Towey ever received a check for $50 or was paid in any form whatsoever. The check never cleared the bank and there was no evidence it was ever in possession of Mrs. Towey. In addition, defendant claims that the book of check stubs was improperly admitted in evidence. We need not decide these questions because we have concluded that under the law of Indiana such evidence was insufficient as a matter of law to establish that plaintiff was a fare-paying passenger rather than a guest even if we assume that the check stubs were properly admitted and that check stub No. 591 established that the check for $50 was delivered by the plaintiff to Mrs. Towey.

In the case of Allison v. Ely, 241 Ind. 248, 170 N.E.2d 371, decided in 1960, the Supreme Court of Indiana reversed outright a judgment recovered on the theory that plaintiff in the case was a fare-paying passenger rather than a guest. The parents of two college students had attended a Dad's Day and the parents of defendant

rode home with the parents of plaintiff, leaving their car for the purpose of having the defendant, plaintiff and plaintiff's sister use it to come home for the Thanksgiving holidays. Purposes involved in leaving the car included a saving in time, avoiding crowded, inconvenient public transportation, and a saving in expense resulting from driving instead of paying for travel via public transportation. The evidence also disclosed that plaintiff contributed a part of the purchase price of gasoline for defendant's car. The Indiana Supreme Court quoted with approval from their earlier opinion in Liberty Mut. Ins. Co. v. Stitzle, 220 Ind. 180, 185, 41 N.E.2d 133, 135, as follows:

" 'The word "guest" has more of social than business significance. The words "without payment for such transportation" imply some valuable consideration for the ride. The presence of the person injured must have directly compensated the owner or operator in a substantial and material way. If the trip is primarily social, incidental benefits though monetary do not exclude the guest relationship. If the trip is primarily for business purposes and the one to be charged receives substantial benefit, though not payment in a strict sense, the guest relationship does not exist. Expectation of a material gain rather than social companionship must have motivated the owner or operator in inviting or permitting the other person to ride. * * *

" 'We do not consider the mere possibility of benefit sufficient to exclude the guest relationship. Some courts have said it must be "tangible and direct." The words imply reality, not potentiality. Courts should not be required to search for a benefit. If it is not apparent then it can hardly be said to be substantial or material.' "

The court in Allison v. Ely ruled that plaintiff had not sustained his burden of proving that he was a fare-paying passenger rather than a guest, stating, 170 N.E.2d l. c. 376: "Whether or not the payment here alleged was such as was intended by the Legislature in § 47–1021, supra, where

it is said: 'while being transported without payment therefor,' is a matter of law to be decided by the court."

In the case of Knuckles v. Elliott, Ind. App., 227 N.E.2d 179, wherein plaintiff had received a verdict on the basis that she was a fare-paying passenger, the Appellate Court of Indiana, in 1967, reversed outright on the authority of Allison v. Ely, supra. In the Knuckles case a Mr. Saylor rode with his step-daughter and others in her car to Kentucky. He testified that his step-daughter had said that she would take them on a trip to Kentucky for expenses. Saylor paid for all gasoline and oil used on the trip and also paid for all meals for everyone. They made the trip to Kentucky, where Mr. Saylor's mother, the plaintiff, joined them and they then started back to Indianapolis. An accident occurred in Indiana in which plaintiff was injured. She sued and recovered judgment and on appeal the issue was whether the evidence was sufficient to establish that plaintiff was being transported for pay or hire rather than as a guest as a result of the payments made by Mr. Saylor, the plaintiff's son. The court said, 227 N.E.2d l. c. 181: "Whether or not the kind of payment here alleged was such as was intended by the Legislature in § 47–1021, where it is said, 'while being transported without payment therefor,' is a matter of law to be decided by the court. Allison v. Ely (1960) 241 Ind. 248, 170 N.E.2d 371." Subsequently, the court went on to say, l. c. 183: "To exclude from the Guest Statute cases of this nature where groups of friends or relatives make arrangements to travel together, consideration must be given by the guest in excess of expenses incidental to the trip. There must be a clear intent on the part of the owner of the vehicle to receive something more than mere reimbursement for such expenses incurred. Little or no economic benefit accrued to Appellant in this case."

We conclude that there is nothing in this record to show that Mrs. Towey was to receive anything more than mere reim-

bursement for some expenses. The trip was of a social rather than a business nature, and under the Indiana Guest Statute, as construed by the Indiana courts, plaintiff was not a fare-paying passenger. We have simply a case of a friend and neighbor of the host making a social trip to New York on which at most she was contributing to a part of the expenses of travel. Numerous other Indiana cases are cited by plaintiff but we conclude that these recent cases settle the question. Consequently, the motion for a directed verdict on Count II should have been sustained and the judgment on Count II must be reversed.

Defendant next asserts that plaintiff did not make a submissible case on Count III and that his motion for a directed verdict thereon should have been sustained. This contention is made on the basis that the evidence failed to show that Mrs. Towey was guilty of "wilful or wanton misconduct" which caused plaintiff's injuries.

■ The Indiana courts have discussed or defined "wilful or wanton misconduct" as used in their Guest Statute on numerous occasions. For example, in Bedwell v. De-Bolt, 221 Ind. 600, 50 N.E.2d 875, 878, the Indiana Supreme Court stated the rule as follows: "To hold one guilty of 'wilful' or 'wanton' conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries."

In Reynolds v. Langford, 241 Ind. 431, 172 N.E.2d 867, the above rule was quoted with approval, and the court also quoted somewhat similar statements from other cases. This same rule is recognized in the subsequent cases of Shane v. Fields, 135 Ind.App. 353, 190 N.E.2d 195, and Richey v. Sheaks, Ind.App., 228 N.E.2d 429.

■ When these rules are applied to the facts in this case, we must hold that plaintiff did not make a submissible case of wilful or wanton misconduct. Mrs. Towey took over the driving as they left the rest area near Angola. She then drove along the exit ramp leading back onto the westbound lane to the turnpike. As she did so, she traveled at a speed of 15 to 30 miles per hour. She evidently struck the curbing along the left side of that ramp. She went over the curbing and then crossed the westbound lane and the grass median strip, finally running onto the eastbound paved surface where the collision occurred. The Long sisters testified that after the car bumped the curbing it seemed to accelerate but they did not know what caused the bump and did not see their Aunt do anything unusual. There was no conversation as the incident occurred. The next thing they remembered was the collision. Mr. Towey also testified and said, "It happened so fast. I don't recall nothing." He also testified that he did not see his wife do anything. Plaintiff was permitted to confront Mr. Towey with his deposition in which he had said that at one time his wife was fooling with some pince-nez smoked glasses, but the time when this occurred was somewhat vague and it was not sufficient to support a finding of wilful or wanton misconduct. The only other witness who testified about the accident was a highway patrolman who was not present when the accident occurred but identified photographs of the scene and also told of various marks and measurements.

■ A showing that Mrs. Towey was negligent was not enough to permit recovery by a guest under the Indiana Guest Statute. In order to recover as a guest under that statute, it was necessary to show that the driver was guilty of wilful or wanton misconduct. The evidence in this case simply does not measure up to what the Indiana court has said is required to make a submissible case by a guest under that statute. Accordingly, we hold that the trial court should have sustained defendant's motion for a directed verdict as to

Count III and the judgment on that count is reversed.

The next question presented is whether we should reverse outright or reverse and remand for new trial. Plaintiff's brief advances the argument that the trial court erred in dismissing Count I of her petition and that if her judgment is reversed outright (or the case is reversed and remanded for new trial on account of trial error), then she should be permitted on remand to submit the case to the jury on the basis of Count I.

In connection with this request, we first must determine whether the issue of the propriety of the action of the trial court in dismissing Count I is before us for consideration. Plaintiff actually filed a notice of appeal which purported to appeal from the judgment of the trial court dismissing Count I of her petition, but subsequently that appeal was dismissed in this court by plaintiff. Defendant asserts that as a result of this action the issue regarding the dismissal of Count I is not now before this court on appeal. The divisional opinion so held, but the case was transferred because of a dissent on that question.

The right of appeal is statutory and the General Assembly in § 512.020, RSMo 1959, V.A.M.S., has specified who may appeal. That section provides that "Any party to a suit aggrieved by any judgment of any trial court in any civil cause * * * may take his appeal * * *." Accordingly, this court has held that, "A party cannot appeal from a judgment wholly in his favor, one that gives him all he asks; but he can appeal from a judgment which gives him only a part of the relief he seeks." Page v. Hamilton, Mo., 329 S.W.2d 758, 762. See also Scott v. Parkview Realty & Improvement Co., 241 Mo. 112, 145 S.W. 48.

In Turner v. Anderson, 236 Mo. 523, 139 S.W. 180, involving a will contest suit asserting undue influence and testamentary incapacity, the trial court submitted the case to the jury on the issue of undue influence but refused to do so on the issue of testamentary incapacity. The jury found for plaintiff contestant and defendants appealed. This court concluded that the evidence of undue influence was insufficient to make a submissible case and that the trial court should have sustained defendants' motion, taking that issue from the jury. The question then arose with reference to whether the court should reverse and remand for a trial on the issue of testamentary incapacity since contestant had not taken any appeal. The opinion recognizes that plaintiff contestant could not have appealed because he was not aggrieved by the judgment which set aside the will, even though the trial court had refused to submit the case on the basis of testamentary incapacity. The court then held that it should review the propriety of the trial court's refusal to submit the issue of testamentary incapacity. It proceeded to review the evidence on that issue and concluded that the evidence thereon was sufficient to make a submissible issue for the jury. As a result, the case was reversed and remanded for a new trial on the issue of testamentary incapacity.

The situation in the case now on appeal is analogous. Plaintiff asserted a single transitory tort claim for personal injuries for which she sought a single recovery. In Count I plaintiff asserted that Missouri law governed the relationship between the parties and whether a guest statute was applicable. In Count II she asserted that she was a fare-paying passenger and hence excluded from the more stringent requirements of the Indiana Guest Statute. In Count III she sought recovery under the Indiana Guest Statute on the basis that the driver was guilty of wanton or wilful misconduct. The fact that she asserted these grounds for recovery in three separate counts does not alter the fact that she had and asserted only a single cause of action for damages for personal injuries.

The trial court denied the plaintiff the opportunity to submit her case to the jury on the theory asserted in Count I but did

submit the case under Counts II and III, and plaintiff obtained a verdict and judgment for $19,000. She did not complain of the amount thereof and hence she was not aggrieved by that judgment, just as the contestant was not aggrieved by the jury verdict in Turner v. Anderson, supra, even though the trial court had submitted the case on only one of the two grounds asserted. The verdict for $19,000 was wholly in plaintiff's favor and gave her what she asked, i. e., recovery for her personal injuries. Under such circumstances, plaintiff was not aggrieved by the judgment and had no right to appeal therefrom. § 512.020; Turner v. Anderson, supra. Consequently, she could not by that means obtain a review of the propriety of the action of the trial court in dismissing Count I of her petition. That being true, unless we now consider on this appeal whether Missouri law should govern the host-guest relationship, as plaintiff contended in Count I, we would, as Judge Lamm said in Turner v. Anderson, 139 S.W. 1. c. 185, turn plaintiff "out of court without a just determination of that issue—a theory palpably abhorrent to refined justice."

■ If plaintiff had had the right to appeal from the judgment by reason of the refusal of the trial court to submit the case to the jury on Count I, and had elected not to do so, then it properly could be held that such question could not be considered on appeal. However, when plaintiff was not an aggrieved party and had no right to appeal, then we must recognize that plaintiff can assert the question of the propriety of the court's action in dismissing Count I if this court concludes, on defendant's appeal, to take away the judgment which plaintiff obtained on the other theories asserted. The fact that plaintiff took an appeal and then dismissed it does not alter the fact that plaintiff had no right of appeal and cannot affect her right to have the question considered on this appeal.

Count I involves the issue of whether the law of Missouri or the law of Indiana should govern certain aspects of this case. Plaintiff recognizes that Missouri has been following the so-called *lex loci delicti* rule in the choice of law to be applied in tort cases. Under this rule, the court applies the law of the place where the tort was committed in everything except procedure, which is governed by the law of the forum.

At one time, the rather generally accepted rule of conflicts in the case of torts occurring in another state was that the law of the forum should be applicable. Thereafter, this theory was superseded by the *lex loci delicti* rule wherein all substantive questions were determined according to the law of the state where the tort occurred, with procedure being governed by the law of the forum. This change apparently resulted from the Beale theory of vested rights.[1] This rule was the one stated in the original Restatement on Conflict of Laws.

In recent years, numerous legal scholars have criticized the *lex loci delicti* rule.[2] These authors have not been in complete accord as to the basis on which the choice

1. Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 281, 95 A.L.R.2d 1; Comment, "Choice of Law Rules in Tort Cases—A Coming Conflict in Missouri," 33 Mo.L.Rev. 81, 82.

2. A partial list includes the following: Cheatham & Reese, "Choice of the Applicable Law," 52 Colum.L.Rev. 959 (1952); Morris, "The Proper Law of a Tort," 64 Harv.L.Rev. 881 (1951); Leflar, The Law of Conflict of Laws (1959) p. 217 et seq.; Ehrenzweig, "Guest Statutes in the Conflict of Laws," 69 Yale L.J. 595 (1960); Ehrenzweig,

"The 'Most Significant Relationship' in the Conflicts Law of Torts," 28 Law & Contemp.Prob. 700 (1963); Cavers, Cheatham, Currie, Ehrenzweig, Laflar and Reese, "Comments on Babcock v. Jackson," 63 Colum.L.Rev. 1212 (1963); Leflar, "Choice—Influencing Considerations in Conflicts Law," 41 N.Y.U.L. Rev. 267 (1966); Leflar, "More on Choice—Influencing Considerations," 54 Calif.L.Rev. 1584 (1966); Ehrenzweig, "A Counter-Revolution in Conflicts Law? From Beale to Cavers," 80 Harv. L.Rev. 377 (1966).

of law in tort cases should be made, but they have been practically unanimous in the view that the *lex loci delicti* rule is too harsh and inflexible and is an unsatisfactory rule. This development is reflected in the Proposed Official Draft of the Restatement (Second) on Conflict of Laws, which abandons the *lex loci* rule as set forth in the original Restatement, and, in § 145, adopts the so-called principal contacts rule as follows:

"§ 145. The General Principle.

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

A discussion of the developments in this field and an analysis of possible application to Missouri is contained in a Comment entitled "Choice of Law Rules in Tort Cases— A Coming Conflict in Missouri" in 33 Missouri Law Review 81. It suggests that the Restatement (Second) rule provides the most logical choice of law rule for Missouri.

Plaintiff, in Count I, alleged that both she and Mary Towey were residents of Missouri, made arrangements in Missouri for a trip which was to begin and end in Missouri, and that the trip was made in an automobile licensed and garaged in Missouri. Plaintiff claims that Missouri is the state which has the dominant interest in this host-guest relationship between Missouri residents arising from the operation of a Missouri automobile on a trip which began and was to end in Missouri, and that its law, rather than that of Indiana, should apply to this host-guest relationship. Plaintiff recognizes that the State of Indiana has the dominant interest in the operation of vehicles on its highways, that its rules of the road should apply and that the law of Indiana should govern the issue of whether defendant was negligent. The issue here presented relates only to which law should govern the host-guest relationship and consequently whether the Indiana Guest Statute is applicable.

The decision as to whether Missouri should retain or abandon the *lex loci delicti* rule in the choice of law applicable in foreign tort cases is not an easy one. The *lex loci* rule has the advantage of certainty and ease of application. Except for matters of procedure in the handling of a case, the law of the place of the tort governs. The only exceptions thereto, in states following the *lex loci* rule, have been in those instances where the forum court concluded that the law of the place of the wrong was against the established public policy of the forum state. There also has been occasional tendency in difficult cases to construe a matter as procedural rather than substantive and on that basis apply the law of the forum.

As indicated, the scholars uniformly criticize the *lex loci* rule as being harsh and undesirable. Actually, application of the *lex loci* rule in this case results in the Indiana Guest Statute imposing a greater hardship on plaintiff than it would impose on an Indiana guest bringing suit in the Indiana courts. Not only was the Indiana Guest Statute, as a part of the substantive law, applied to plaintiff's case (as it would be to a suit by an Indiana guest), but plaintiff's effort to recover was made even more difficult by enforcement of § 491.010,

the Missouri Dead Man's Statute, as a part of the forum law governing procedure. This resulted in exclusion of most of plaintiff's testimony and made proof of her claim more difficult. Indiana, on the other hand, has no Dead Man's Statute and an Indiana resident would be permitted to testify fully about his or her arrangements for the trip and any payments made to deceased driver. Such plaintiff also could testify fully as to the accident itself.

A majority of the states still adhere to the *lex loci delicti* rule. Several of those states have considered recently the question of whether to adopt the new principles advanced but have concluded to continue the *lex loci delicti* rule.[3] Some have done so on the basis of the rule of *stare decisis*. Others have stated that they were unwilling to change because they felt too many uncertainties existed at that time with reference to possible application of the proposed flexible rule. However, an increasing number of jurisdictions have abandoned the inflexible application of the rule of *lex loci delicti* in favor of a more flexible choice of law rule in tort cases. The majority of these cases have involved the application of host-guest statutes or the question of interspousal liability for injuries received in automobile accidents.

One of the earliest cases adopting the new approach in the choice of law to determine the host-guest relationship in foreign tort cases was Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279, 95 A.L.R.2d 1. In that case several Rochester, New York residents left that city for a weekend trip to Canada. Several hours later, while driving in Ontario, the automobile was involved in an accident in which Miss Babcock, one of the guests, was injured. Subsequently, she brought an action for personal injuries against her host in New York. Defendant moved to dismiss the complaint on the basis of an Ontario statute which provided that an owner or driver of an automobile would not be liable to his guest for personal injuries. New York had no guest statute and the issue arose as to whether the law of Ontario or the law of New York should determine the host-guest relationship. In the course of the opinion the New York court recognized that Ontario would have the dominant interest in the determination of the issue of negligence, saying, 240 N.Y.S.2d l. c. 750, 191 N.E.2d l. c. 284: "Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place."

However, on the question of whether plaintiff should be barred from recovery as a guest, the court said, 240 N.Y.S.2d l. c. 751, 191 N.E.2d l. c. 284: "As to that issue, it is New York, the place where the parties resided, where their guest-host relationship arose and where the trip began and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law. Although the rightness or wrongness of defendant's conduct may depend upon the law of the particular jurisdiction through which the

---

3. Shaw v. Lee, 258 N.C. 609, 129 S.E. 2d 288; Oshiek v. Oshiek, 244 S.C. 249, 136 S.E.2d 303; Friday v. Smoot, Del., 211 A.2d 594; White v. King, 244 Md. 348, 223 A.2d 763; Landers v. Landers, 153 Conn. 303, 216 A.2d 183. The following cases also continued to follow the *lex loci* rule but reserved possible further consideration of the question in a later case involving a different factual situation: Browning v. Shackelford, Miss., 196 So.2d 365; McGinty v. Balentine Produce, Inc., 241 Ark. 533, 408 S.W.2d 891. See also Cherokee Laboratories, Inc. v. Rogers, Okl., 398 P.2d 520, and Marmon v. Mustang Aviation, Inc., Tex.Civ.App., 416 S.W.2d 58.

automobile passes, the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place."

In Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408, the host and guest were residents of Wisconsin. The arrangements for the trip were made in that state and the car was garaged and insured in Wisconsin. An accident occurred in Nebraska. The issue presented was whether to apply the Nebraska guest law to the suit by the guest in Wisconsin for recovery for personal injuries. Wisconsin had no guest statute. The court held that the Wisconsin law would govern this question, saying, 133 N.W.2d 1. c. 414: "All of the commentators and all of the cases that end up in disagreement with the unbending application of *lex loci* have a common thread that runs through the skein of rationale, and that thread is that the place of the occurrence of an unintentional tort is fortuitous, and it is by mere happenstance that the *lex loci* state is concerned at all. The most dramatic instance of this type of fortuitousness is the case where an airplane is forced off its course and crashes in a state or country that was not on its route.

"They are also dismayed that in this day of rapid transportation, whether by land or air, that the rights and liabilities of the parties as to each other should vary from hour to hour, or indeed minute to minute, as state boundaries are crossed. In the case before us the parties, husband and wife, passed through a number of states on their vacation. There appears to be no reason why the duty of the host to the guest should vary on the basis of factors that are not in any wise related to the public policy of the state most intimately concerned or. associated with a changed relationship between the parties."

In Wessling v. Paris, Ky., 417 S.W.2d 259, residents of Kentucky made a trip from that state into Indiana. Kentucky had no guest statute and the issue was whether it should apply the Indiana Guest Statute in plaintiff's action in the Kentucky courts for personal injuries received in an accident which occurred in Indiana. The court referred to the Restatement (Second), Conflict of Laws, Babcock, and various other cases and said, 417 S.W.2d 1. c. 260: "It would be strange if under Kentucky law the respective rights of the parties should undergo some metamorphosis at a point on the bridge just before reaching the Indiana shore.

"While it might be said that Indiana has a policy of protecting drivers on their highways from claims by passengers, surely this must extend no further than an interest in protecting Indiana residents or those who sue in Indiana courts. No highway safety problem is involved. In fact the State of Indiana has no interest whatsoever in this Kentucky lawsuit and it is hard to discern what interest a Kentucky court would be promoting by applying the Indiana law."

In Fuerste v. Bemis, Iowa, 156 N.W.2d 831, the Iowa Supreme Court considered whether its guest statute should apply to an action in Iowa between Iowa residents for an alleged wrongful death which occurred on the highways of Wisconsin. The parties were going from Dubuque, Iowa to Lansing, Iowa, but their route took them over about 30 miles of roads in Wisconsin. On the return trip, an accident occurred in Wisconsin. There was no issue regarding negligence or the law applicable thereto on appeal, the issue being solely whether the Iowa Guest Statute should apply because Wisconsin had no guest statute. The opinion discusses various cases and articles, including Restatement (Second), and concludes that all significant relationships were with the State of Iowa and that the presence of the parties in Wisconsin at the time of the accident was merely fortuitous. The court held that the Iowa Guest Statute was applicable, and since plaintiff had not alleged conduct violative of that statute, judgment on the pleadings was proper.

Some of the other cases involving guest statutes in which the court has abandoned the *lex loci delicti* rule are Clark v. Clark, 107 N.H. 351, 222 A.2d 205, (an excellent discussion by Chief Justice Kenison); Woodward v. Stewart, R. I., 243 A.2d 917; Schneider v. Nichols, 280 Minn. 139, 158 N.W.2d 254, and Mellk v. Sarahson, 49 N. J. 226, 229 A.2d 625.

Other courts have abandoned the inflexible *lexi loci delicti* rule in cases involving the law to be applied in determining whether one spouse may sue the other in connection with injuries arising from an automobile accident. For example, in Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544, Mr. and Mrs. Wartell, residents of Illinois, were driving through Florida when they were involved in an automobile collision which caused the death of Mr. Wartell. Mrs. Wartell was injured and subsequently she brought suit in Illinois against the administrator of her deceased husband's estate to recover for her injuries. In holding that the Illinois statute prohibiting suit by one spouse against the other for a tort committed during coverture was applicable, the Supreme Court of Illinois said, 213 N.E.2d l. c. 545: "In our opinion, the law of Illinois clearly applies in this case. We can think of no reason why Florida law should control the question whether a husband and wife domiciled in Illinois should be able to maintain an action against each other for a tort committed during coverture. The fact that the alleged tortious act took place in Florida is of no significance in determining which law should govern the determination of this issue. The law of the place of the wrong should of course determine whether or not a tort has in fact been committed, but the distinct question of whether one spouse can maintain an action in tort against the other spouse is clearly a matter which

should be governed by the law of the domicile of the persons involved. Here the domicile is Illinois. Illinois has the predominant interest in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question of whether interspousal tort suits may be permitted between Illinois residents would be illogical and without a sound basis."

In Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254, the Supreme Court of that state, in determining the capacity of a wife to sue her husband for injuries received in an Arizona accident, applied the law of New York, which was the domicile of both the husband and wife, the Arizona court in a well reasoned opinion adopting the Restatement (Second) rule.

Illustrative of other instances in which the new approach is adopted in the choice of law is Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, which contains an extensive discussion of both Law Review articles and reported cases.[4]

We have concluded that we should abandon the inflexible *lex loci delicti* rule in favor of the rule set forth in § 145 of the Proposed Official Draft of Restatement (Second) on Conflict of Laws. Applying that test to the facts of this case, it is clear that Missouri has the most significant relationship to the occurrence and the parties. Of course, the injuries occurred in Indiana and that is the place where the negligent conduct occurred, but as some of the writers and cases have pointed out, we do not engage in the mere counting of the number of contacts but must evaluate them in order to determine what state has the most significant contacts. Indiana's only real interest is in requiring that Missouri residents comply with its standards of care for operation of

4. Other cases in which the *lex loci delicti* rule has been abandoned include: Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y. S.2d 591, 221 N.E.2d 380; Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526;

Haumschild v. Continental Casualty Co., 7 Wis.2d 130, 95 N.W.2d 814; Koplik v. C. P. Trucking Corp., 27 N.J. 1, 141 A.2d 34; Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897.

motor vehicles on its highways. No interest of that state would be served by applying its guest law for the purpose of determining the host-guest relationship between these Missouri parties. On the other hand, Missouri has a real interest therein. The parties are residents of Missouri, made arrangements for the trip in Missouri, and traveled in a car licensed and garaged in Missouri. The whole relationship of the parties is centered in Missouri. Our General Assembly has not adopted a guest statute to restrict the right of recovery by a guest from his host, thereby indicating that Missouri has a decided interest in having Missouri citizens who ride as passengers protected from negligent injury by Missouri hosts. Missouri has a greater concern than any other state in the relationships between its citizens. In a factual situation such as is here presented, a Missouri passenger, starting from Missouri on a trip with a Missouri host, should have a right of recovery if injured by negligence of his or her host regardless of where on that trip the negligence occurs. The question of negligence, as the various cases have indicated, should be determined by the law of the state where the tort occurs because that is the state with the dominant interest concerning that issue, but such right of recovery should not be limited or barred, depending on whether that state does or does not have a guest statute.

Incidentally, we have found no Indiana case which has considered whether to adopt the principal contacts approach in foreign tort cases, but it is interesting to note that in W. H. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417, a case involving a note given by an Indiana debtor to an Illinois creditor, the court in determining that the validity of the note in question should be determined by Illinois law, said, 63 N.E.2d l. c. 423: "In view of the unsatisfactory state of the decisions, both in Indiana and other jurisdictions, and as a test of the correctness of our conclusion that the validity of the note and its cognovit clause

must be determined by the law of Illinois, we resort to a method used by modern teachers of Conflict of Laws in rationalizing the results obtained by the courts in decided cases. So far as we know it has not been formulated by any court into a rule, but if one were attempted it might be stated as follows: The court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." This statement, although written in 1945 before most of the cases herein discussed were decided, would seem to indicate a viewpoint compatible to the one we herein adopt.

This new rule for the choice of law will make the judicial task more difficult, at least until additional cases have established further guidance. This is true because no longer will there be a mere mechanical determination of where the wrong occurred. In addition, there occasionally may be factual situations in which it will be difficult to establish clearly that a particular state has the most significant relationship as to a particular issue or issues. If and when such situations arise, then the trial court should continue, as in the past, to apply the substantive law of the place of the tort. However, in establishing this procedure for cases in which the court finds it difficult to make the determination pursuant to § 145 of Restatement (Second) on Conflict of Laws, we do not intend that it should provide a means of abdicating the obligation of determining the state which has the most significant relationship. In most, and perhaps in all, cases it should be possible for the trial court to determine the state with the most significant contacts and relationship to the issues involved pursuant to the views herein expressed.

The judgment is reversed and the case is remanded for further proceedings on Count I which are not inconsistent with the views herein expressed. Such retrial should be limited to the issue of liability

only. The defendant has not raised any question on appeal with respect to the extent of plaintiff's injuries or the amount of the verdict which was returned by the jury. Appellant's brief says, "There is no reason to set out here any testimony concerning those alleged injuries, since no point in this brief is concerned with such alleged injuries." Under such circumstances, there would appear to be no useful purpose in having a retrial on the issue of the extent of damages. The issue presented is one of liability, and the retrial is limited to the issue of liability only.

HOLMAN, C. J., and SEILER, J., concur.

DONNELLY, J., concurs in result in separate opinion filed.

STORCKMAN, J., dissents in separate dissenting opinion filed.

HENLEY, J., dissents and concurs in dissenting opinion of STORCKMAN, J.

MORGAN, J., not participating because not a member of the court when cause was submitted.

DONNELLY, Judge (concurring in result).

I would not abandon the certainty of the *lex loci delicti* rule at this time, but, in this particular fact situation, would hold that enforcement of the Indiana Guest Statute in Missouri is against public policy. See Ehrenzweig, "A Counter-Revolution in Conflicts Law? From Beale to Cavers," 80 Harvard Law Review, 377, 399, 400 (1966).

I concur in result.

STORCKMAN, Judge (dissenting).

I agree in the circumstances of this case that the plaintiff as respondent was entitled to urge alternatively that she was entitled to submit her case on count one if her judgment was not sustainable on counts two or three.

A respondent on appeal may attack erroneous rulings of the trial court in order to sustain a judgment in his favor. Siemer v. Schuermann Building & Realty Co., Mo., 381 S.W.2d 821, 828 [5]; St. Charles Savings Bank v. Denker, 275 Mo. 607, 205 S.W. 208, 212 [11].

Further, where an appellate court reverses a judgment, it may in its discretion remand the cause for a new trial on material issues which have not been fully litigated. Radford v. Radford, Mo., 388 S.W.2d 33, 40 [13]; Downing v. Dixon, Mo., 313 S.W.2d 644, 652 [16]; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 423 [8, 9]. In Blaser v. Coleman, plaintiff's judgment under the humanitarian doctrine was reversed and this court remanded for a new trial on primary negligence which had been abandoned. For additional decisions recognizing the court's discretion in this regard, see Missouri Digest, Appeal and Error Key No. 1177(6), and 5B C.J.S. Appeal and Error § 1942, p. 494.

The principal opinion, however, places its decision in this regard on the ground that the plaintiff "had no right to appeal". This may be misleading and encourage parties *not* to file a *notice* of appeal where the better and safer practice would be to do so. Clearly, the plaintiff would have had no standing to maintain her appeal if the judgment debtor had not appealed. Since the defendant did appeal, it would have made a more orderly and informative presentation if the plaintiff had alternatively briefed her point as to count one as an appellant. Such practice is not uncommon. It would have avoided the controversy as to procedural rights and the hazard of the respondent being wrong in her choice.

While I agree that the alleged error of the trial court could be urged by the plaintiff as a respondent, I cannot agree that it has been demonstrated that the *lex loci*

*delicti* rule is outmoded and should be abandoned. As the principal opinion recognizes the Proposed Official Draft of the Restatement (Second) on Conflict of Laws lacks the certainty of the present practice and has been adopted by less than a fourth of the states. Our own rules and decisions admonish us not to interfere with the judgment of a trial court unless it is *clearly erroneous.* The prior decisions of this court should be accorded the same deference.

In these days when the role of the rule of law is becoming more indistinct and less respected, there is virtue in refusing to experiment when the need is not clearly demonstrated. As I see it, the Restatement rule cannot assure a uniformly more just result. In permitting one litigant to shop around for the most favorable forum, the other party may be put to a greater disadvantage not anticipated or deserved.

The two views were well briefed and presented by the briefs and arguments of the parties. It would serve no useful purpose to repeat their alleged merits and demerits here.

For the reasons given, I respectfully dissent.