**George MOSS, Plaintiff,**

v.

**The NATIONAL LIFE AND ACCIDENT INSURANCE CO., Defendant.**

**No. 20700-4.**

United States District Court,
W. D. Missouri, W. D.

Nov. 27, 1974.

Nicholas L. Swischer, Russell & Brown, Nevada, Mo., for plaintiff.

Robert F. Redmond, III and David M. Harding, Terrell, Van Osdol & Magruder, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER CONCERNING STATE LAW APPLICABLE TO THIS ACTION

ELMO B. HUNTER, District Judge.

This is an action wherein plaintiff, the beneficiary under an insurance policy on the life of James V. Moss issued by defendant, seeks to recover the $10,000.00 face value of the policy, the

$20,000.00 accidental death benefit, damages for vexatious refusal to pay, and reasonable attorneys' fees incurred in the prosecution ·of this action. The action was removed to this Court from the Circuit Court of Jackson County, Missouri, on the basis of diversity of citizenship between the parties and an amount in controversy in excess of $10,-000.00. See 28 U.S.C. §§ 1332 and 1441 et seq.

The pleadings in this cause raise the issue of whether the law applicable to the contract of insurance upon which plaintiff has brought suit and the state law applicable to various claims and defenses raised in the action is that of the State of Missouri or the State of Oklahoma. The parties have filed briefs on these issues, and on August 12, 1974, the Court, treating the dispute as cross-motions to strike claims and defenses, permitted the parties to adduce evidence in support of their respective positions on the conflict of laws issue. This matter is presently before the Court solely on the issue of whether the law of Missouri or Oklahoma is applicable in determining the validity of the contract of. insurance and the rights and liabilities created thereby.

There are essentially two questions involved herein upon which the parties differ in their application of state law. The first dispute is whether Section 375.420 RSMo., providing damages and reasonable attorneys' fees for vexatious refusal to pay insurance proceeds, may be asserted by plaintiff in this action. The second is whether the law of the State of Missouri or the State of Oklahoma governs the question of the defense of suicide which has been asserted by defendant. Prior to a determination of these choice of law questions, a review of the facts is in order. From the stipulations, depositions, testimony and exhibits received at the evidentiary hearing in this matter, the Court makes the following findings of fact.

On or about October 2, 1970, James V. Moss made application for a National Life and Accident Insurance Company policy through Raymond Stiverson, Jr., an agent of the Company. This application was accompanied by a promissory note and assignment of policy in payment of the initial policy premium. Following this application and arrangement for payment of initial premium, National Life and Accident Company, from its home office in Nashville, Tennessee, issued a policy of insurance No. 70308569 on December 14, 1970, insuring the life of James V. Moss. This policy was delivered to James V. Moss on or about December 18, 1970, and named as primary beneficiary, George Moss. James V. Moss died on or about October 28, 1971, at Kansas City, Missouri, as a result of suffocation by hanging, and on the date of death the policy of insurance was in full force and effect. That policy provides for the payment of $10,000.00 upon the death of James V. Moss, and an additional $20,000.00 in the event his death is found to be accidental.

At the time James V. Moss applied for and was issued the mentioned policy of insurance, he was a student at Bethany Nazarene College, Bethany, Oklahoma, and was living in the on-campus college dormitory. Following his completion of the course of study at Bethany College in May 1971, James V. Moss resided for a short time with his parents in their home near Milo, Missouri. In the summer of 1971 he moved to Kansas City, Missouri, and attended the Nazarene Seminary in that city. At the time of his death in October, 1971, James V. Moss was a resident of Kansas City, Missouri, and a student at the Nazarene Seminary.

In the application for insurance, James Moss informed the agent and the agent listed his "Home or permanent address" as P. O. Box 825, Bethany, Oklahoma, and his "School Residence" as "Bethany Nazarene College, Chapman Hall, Room 161, Bethany Oklahoma." The address listed as "Home or Permanent Address" was in fact the applicant's mail box in the College dormitory, and the agent completing the

application was aware of that fact at the time the application was completed. The agent at the time the application was made did not attempt to determine if James Moss had a "Home or Permanent Address" other than that given, even though the agent was aware that the address listed was the same as that listed as "School Residence". This application was signed by James Moss, and under the terms of the policy made a part of the policy of insurance. Additionally, in connection with the policy application, James V. Moss executed a promissory note and assignment of insurance policy in the amount of $172.00 with interest at the rate of 8% payable in five years to the Third National Bank of Nashville, Nashville, Tennessee. This instrument was executed on October 2, 1970, at Bethany, Oklahoma, and listed the "permanent home address" of James V. Moss as "P. O. Box 825, Bethany, Oklahoma." Upon issuance, the policy of insurance was personally delivered to James V. Moss in Bethany, Oklahoma by George Ashford, an agent of defendant.

The evidence establishes that commencing in 1953 James V. Moss resided with his parents in the State of Missouri until he left the family home in Southwest Missouri to attend college in Bethany, Oklahoma. Throughout his college years, James Moss lived in the dormitory at Bethany College. His school mail and scholastic grades were sent by the college to his parent's home in Missouri. His Selective Service Registration Card was issued on December 30, 1965, by Local Board No. 102 in the State of Missouri. During his college years, James V. Moss obtained several National Defense Student Loans from Bethany College and on June 5, 1970, listed thereon his permanent address as Moundville, Missouri. Throughout his college years he spent his vacations at his parent's home in Southwestern Missouri, and a place to sleep was maintained for him there. His address for purposes of billing oil company credit purchases during his last year of college was the home of his parents in Milo, Missouri. While in college, James V. Moss maintained some livestock of his own on his parents' farm near Milo, Missouri and had an acre of that farm which had been set aside for him which he periodically worked to improve.

On August 25, 1971, while James Moss was residing in Kansas City, Missouri, the Church of the Nazarene licensed him as a minister for a one year period in the Kansas City, Missouri District Assembly of that Church. Prior to his death in October, 1971, James Moss resided in student housing in the Kansas City, Missouri area; maintained a checking account with a bank in Kansas City, Missouri; and was employed at Research Hospital and Medical Center in Kansas City, Missouri. On October 8, 1971, the defendant, through its agent, mailed to James Moss its notice that premiums on his policy would soon become due. This notice was sent to James Moss, c/o his father, Route # 1, Milo, Missouri. Letters from James Moss to his parents in February, 1971, and from his fiancee to him in July, 1971, indicate that prior to his death, James Moss intended to make his home in Kansas City, Missouri, and was seeking to obtain a ministry in the State of Missouri.

The defendant National Life and Accident Insurance Company is incorporated under the laws of the State of Tennessee and maintains its home office in Nashville, Tennessee. It is licensed to do business in both Oklahoma and Missouri and in other states. The policy of insurance which is the subject of this suit provides in pertinent part, concerning payments of the face amount of $10,000.00, as follows:

"If the insured, within two years from the Date of Issue of this Policy, shall die of suicide, while sane or insane, the Company's liability shall be limited to the premiums actually received, less any indebtedness to the Company against this policy."

The Policy further provides in regards to payment of triple indemnity on accidental death as follows:

> "No payment shall be made under this agreement for death or dismemberment which results either directly or indirectly, or wholly or partially, from (1) intentionally self-inflicted bodily injury or suicide, while sane or insane . . . ."

The "conflict" between Missouri law and Oklahoma law pertinent herein involves the Missouri statutory limitation of defenses which can be asserted by an insurer in a suit by the beneficiary of a life insurance policy, and Oklahoma statutes governing the content of life insurance policies. Section 376.620 RSMo (1969), V.A.M.S. provides:

> "In all suits upon policies of insurance on life hereinafter issued by any company doing business in this state to a citizen of this state it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or a jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

Title 36, section 4024 of the Oklahoma statutes provide:

> A. No policy of life insurance shall be delivered or issued for delivery in this state if it contains a provision which excludes or restricts liability for insurance caused in a certain specified manner or occurring while the insured has a specified status, except that a policy may contain provisions excluding or restricting coverage as specified there in the event of death under any one or more of the following circumstances:
>
> \* \* \* \* \* \*
>
> (3) Death within two (2) years from the date of issue of the policy as a result of suicide, while sane or insane, provided that in the event of death as a result of suicide within two years from the date of issuance of the

policy the insured shall return the amount of all premiums paid.

> \* \* \* \* \* \*
>
> "C. This section shall not apply to group life insurance, accident and health insurance, reinsurance or annuities, or to any provision in a life insurance policy relating to disability benefits or to additional benefits in the event of death by accident or accidental means."

 In determining whether the rights and liabilities of the parties herein shall be governed by the law of Oklahoma or Missouri, the Court applies the law of the forum state. Therefore, the choice of law rules of the State of Missouri are applicable in this diversity action. Klaxon v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Insurance is a matter of contract and is generally governed by principles applicable to contracts. Galemore v. Haley, 471 S.W.2d 518 (Mo.App.1971). Under classical choice of law theories, Missouri courts in the past have generally held that matters bearing on the execution and validity of a contract are governed by the law of the place where the contract is made. See Schone v. Hickman, 397 S.W.2d 596 (Mo.1965); Nelson v. Browning, 391 S.W.2d 873 (Mo.1965); Grider v. Twin City Fire Insurance Company, 426 S.W.2d 698 (St.L.App.Mo.1968); Auffenberg Lincoln-Mercury, Inc. v. Wallace, 318 S.W.2d 528 (St.L.App.Mo.1958); see also cases cited in Vernons Annotated Missouri Digest, Contracts, Key 2, and 325. This classical theory, generally referred to as the rule of *lex loci contractus* has been confined to matters relating to the execution and validity of a contract, while matters of "remedy" or "procedure" were governed by the law of the state where the action was brought. See Auffenberg Lincoln-Mercury, Inc. v. Wallace, supra at 532. Further deviation from the strict *lex loci contractus* rule can be found in decisions which hold that on matters relating to performance the law of the state where

the contract is to be performed governs the rights and liabilities of the parties See Liebing v. Mutual Life Insurance Company of New York, 276 Mo. 118, 207 S.W. 230 (1918). Other decisions brought confusion into the area of the law by holding that a contract is "made" in the state wherein it is "accepted" or where the final act necessary to create an obligation on the parties is performed. See Liebing v. Mutual Life Insurance Co. of New York, *supra.* This "place of making" could be either the state in which the insurance company maintained its home office which issued the policy, or the state wherein the payment for the first premium was made. Compare, Head v. New York Life Insurance Company, 241 Mo. 403, 147 S.W. 827 (1912) to Pickett v. Equitable Life Assurance Society, 27 S.W.2d 452 (St.L.App.Mo.1930). Further considerations entered into the choice of law decisions by the introduction of matters of "state policy" into the determination. See for example, Head v. New York Life Insurance Company, *supra.* In *Head* the Missouri Supreme Court determined that the policy behind statutes regulating contracts between Missouri citizens and insurance carriers doing business in the State of Missouri required that a citizen of New Mexico who entered into a contract of insurance in Missouri by reason of paying the premium to the New York Company's agent in Missouri was entitled to the protection afforded by the Missouri statutes. Following the decision in *Head* the St. Louis Court of Appeals in 1930 held in Pickett v. Equitable Life Assurance Society, *supra,* that a contract of insurance negotiated in Colorado between a New York Insurance Company and a Missouri citizen temporarily residing in Colorado was governed by the law of New York by reason of the policy having issued in New York, and that the insured and beneficiary, both Missouri citizens, were not afforded the protection of the Missouri statutes regulating insurance contracts. The court in that decision stated in substance that

the policy behind the regulatory law was to regulate insurance carriers while doing business within the state, and not to afford protection to citizens of the state. See also, Gray v. Metropolitan Life Insurance Company, 150 S.W.2d 563 (St.L.App.Mo.1941). Both the *Pickett* and *Gray* decisions deal with the applicability of prior Missouri statutes which precluded the raising of the defense of suicide by an insurance carrier, notwithstanding the terms of the policy, such as provided by 376.620 RSMo. (1969), V.A.M.S.

If this Court would strictly follow the choice of law rules evidenced by the *Gray* and *Pickett* decisions, the law applicable in determining the validity and execution of the contract of insurance in question would most likely be that of the state of Tennessee, the State in which the application or "offer" for insurance was "accepted" and the place where the premium was paid by the Third National Bank of Nashville. However, if this Court would follow the choice of law rule set forth in *Head* or *Leibing* the law governing could be either that of the state of Oklahoma, the state where the insurance company "did business", or the State of Missouri, the state where the contract was to be performed by the payment to the beneficiary. Alternatively, the Court might delve into the complexities of the law of "offer and acceptance" of promissory notes, and of third party assignments of insurance policies to determine where each of the contracts involved herein was "made", and thereafter apply the law of the place of "making" to each of the agreements, except, of course, on matters relating to "remedy", "procedure" or performance. These various alternatives available in the application of the *lex loci contractus* rule and its exceptions, readily explain why the rule and similar choice of law rules have recently been viewed with disfavor by courts. The Missouri Supreme Court recognized the problems inherent in the *lex loci contractus* approach in the case of In re

DeGheest's Estate, 362 Mo. 634, 243 S. W.2d 83 (1951).

■ In 1969 the Missouri Supreme Court in Kennedy v. Dixon, Mo., 439 S.W.2d 173, abandoned the classical choice of law rule in tort cases known as *lex loci delicti* and adopted the more liberal approach advocated by the Restatement (Second) on Conflicts of Law, Section 145, in determining the law to be applied in tort cases. See State ex rel. Broglin v. Nangle, 510 S.W.2d 699 (Mo. en Banc 1974); Griggs v. Riley, 489 S.W.2d 469 (Mo.App.1972). Similar to the *lex loci contractus* rule, the *lex loci delicti* rule generally applied the substantive law of the state wherein the tort occurred, and that ritualistic or mechanical application on many occasions resulted in unsatisfactory results. See Kennedy v. Dixon, *supra*. Although the Missouri Supreme Court in *Kennedy* cited many authorities which advocate not only the abandonment of *lex loci delicti* but also of *lex loci contractus,* it did not hold or state that it would adopt the more liberal Restatement (Second) approach in the area of contracts. Since the decision in *Kennedy*, no Missouri appellate court has either adopted or refused to adopt the Restatement approach in the area of contracts, and none has reaffirmed the *lex loci contractus* approach. See American Institute of Marketing v. Brooks, 469 S.W.2d 932 (St.L.App.Mo.1971). However, decisions from federal courts applying Missouri choice of law rules have adopted the Restatement (Second) approach in anticipation of the Missouri Supreme Court's decision to do so. See Brinkley Co. v. Teledyne Mid-America Corporation, 333 F.Supp. 1183, 1185 (E.D.Mo. 1971); Taylor v. Royal Insurance Company, 235 F.Supp. 891 (W.D.Mo.1964); Nelson v. Aetna Life Insurance Co., 359 F.Supp. 271 (W.D.Mo.1973); see also Foam-Tex Industries, Inc. v. Relaxaway Corporation, 358 F.Supp. 8 (E.D. Mo.1973). This court is in agreement with the conclusion reached by Judge Oliver in Nelson v. Aetna Life Insurance Company, *supra,* that the 1969 decision of the Missouri Supreme Court in Kennedy v. Dixon clearly forecast that court's eventual abandonment of its prior admittedly confusing and conflicting choice of law rules as they related to contracts, and that if presented with the question the Missouri Courts would follow the approach advocated by the Restatement (Second) Conflicts of Law. Therefore, in resolving the choice of law issues presented herein, the Court will apply the approach advocated by the Restatement (Second).

Section 192 of the Restatement (Second), Conflicts of Law provides:

"The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

There is, in the contract of insurance in question "an absence of an effective choice of law by the insured in his application," within the meaning of Section 192 of the Restatement (Second). See Nelson v. Aetna Life Insurance Company, supra at pp. 291–294. Restatement (Second), Conflicts of Law, Section 192, Comments (c) and (e).

■ Under the facts and circumstances of this case, the Court finds that James V. Moss maintained his domicile in the State of Missouri at the time the application for the life insurance policy in question was made. It is undisputed that prior to his attending Bethany College in Oklahoma that the domicile and residence of James V. Moss was in the State of Missouri. The evidence further establishes that upon graduation from college in Oklahoma, James V. Moss immediately returned to Missouri and es-

tablished his residence in that state. A domicile of origin is presumed to continue until it is established that a new domicile has been lawfully acquired. And, in order to establish that an individual had acquired a new domicile, it must be shown that he was physically present in a place, *and* that he had the intention of making that place his present home. See Clark v. Settle, 206 F. Supp. 74 (W.D.Mo.1962) and cases cited therein. Evidence showing merely that one had left his home to attend school in another place does not, without a showing of intent to make the school his present home, establish that he had abandoned his original domicile and acquired a new one. Where the facts are conflicting as to the person's intent, the original domicile is favored as the legal domicile. State ex rel. King v. Walsh, 484 S.W.2d 641 (Mo. en Banc 1972).

■ In the instant cause, the only evidence produced by defendant on the issue of the intent of James V. Moss concerning his domicile is the evidence that the defendant's agent listed on the insurance application that James Moss's "Home or Permanent Address" was a post office box in the college dormitory in Bethany, Oklahoma, and that James Moss signed that application. The evidence offered by plaintiff concerning the intent of James V. Moss prior to, at the time of, and after the application was made, convinces that at the time of the application he intended that his "home" was that of his parents in the State of Missouri. Defendant has failed to rebut the presumption that James Moss maintained his original domicile while attending college in Oklahoma, and, disregarding that presumption, the evidence offered by plaintiff establishes that the domicile of James V. Moss was at all pertinent times in the State of Missouri. Therefore, unless, within the meaning of Section 192 of the Restatement (Second), Conflicts of Law, with respect to the particular issues herein, the State of Oklahoma has a more significant relationship to the transaction and parties under Section 6 of that Re-

statement, the law of the State of Missouri is applicable in determining the validity of and rights created by the policy of insurance which is the subject of this litigation.

■ Section 6, Restatement (Second), Conflicts of Law provides as follows:

(1) "A court, subject to constitutional restrictions will follow a statutory directive of its own state on choice of law.

(2) "When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

The application of Section 6 principles in the area of insurance contracts is specifically discussed in Comment (d) of Section 192 of the Restatement (Second). And the application of Sections 6 and 192 to the relevant considerations involved in Section 376.620 RSMo (1969), V.A.M.S. is discussed in the case of Nelson v. Aetna Life Insurance Company, *supra*. For the reasons stated by Judge Oliver in that decision, this Court is convinced that neither the states of Oklahoma or Tennessee has a more significant relationship than the State of Missouri to the transaction and parties involved in this action within the meaning of Section 6 of the Restatement (Second). The State of Missouri has

evidenced a strong concern with the protection of its citizens, both insured and beneficiaries, by the enactment of Section 376.620, limiting the defense of suicide, and Section 375.420, providing damages and attorney's fees for vexatious refusal to pay. The laws of Oklahoma and Tennessee do not evidence a significant and legitimate concern which would suggest that the Missouri insured and beneficiary should be denied that protection and those rights in an action brought in Missouri courts. It cannot be said that the insurance company could justifiably expect that Missouri Law not be applicable to the contract of insurance. Raymond Stiverson, the agent of defendant who took the application for insurance from James Moss, testified in his deposition that in taking applications his usual procedure was to ask the applicant "the address that he wished to use on the application or what his address was," and in many cases he simply asked "what is your address?" If an insurance carrier desires to "justifiably expect" the law of a particular state to be applied to a contract of insurance, it should present the questions which would elicit facts pertaining to a determination of domicile. Absent such questions, the insurer is in no position to complain that it did not expect the insured's domicile to be somewhere other than his "residence". This is particularly true when the insurer is soliciting applications for life insurance from college students in school dormitories.

Under the choice of law rules which this Court has determined the Missouri Courts would apply, it is concluded that the law of Missouri governs the validity of the policy of insurance in question and the rights and liabilities of the parties to this action.

In reaching its conclusions, the Court merely finds that Section 376.620 RSMo. is the law applicable in determining the defenses which can be raised by defendant in this proceeding, and that plaintiff may plead and attempt to prove damages for vexatious refusal to pay under Section 375.420 RSMo. The Court does not find that damages for vexatious refusal to pay would be proper in this case, but specifically reserves that question for trial. See Sommer v. Metropolitan Life Insurance Co., 449 S.W.2d 644 (Mo. en Banc 1970).

Accordingly, for the reasons stated, defendant's motion to strike plaintiff's claims for damages, costs and attorney's fees under Section 375.420 RSMo is hereby denied. The portions of defendant's answer asserting defenses on the basis of the law of the State of Oklahoma are hereby stricken. Further proceedings in this action will be governed by the substantive law of the State of Missouri.

It is so ordered.